UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340



WILLIAM J. MARTINI
       JUDGE

## LETTER OPINION

May 12, 2010

Kenneth Zahl
3 Cambridge Road
Morristown, NJ 07960
       *Pro Se Plaintiff*

Michael George McNally, Esq.
Kroll Heineman LLC
Metro Corporate Campus I
99 Wood Avenue South, Suite 307
Iselin, NJ 08830
       *Attorneys for Defendant*

       Re:   *Zahl v. Local 641 Teamsters Welfare Fund*
             Civil Action No. 09-1100

Dear Litigants:

   This matter comes before the Court on the Motion for Summary Judgment by Defendant Local 641 Teamsters Welfare Fund (the "Fund"), seeking dismissal of the Complaint pursuant to Fed. R. Civ. P. 56.  Oral arguments were not held.  Fed. R. Civ. P. 78.  For the reasons set forth below, Defendant Fund's motion is **GRANTED** and the Complaint is **DISMISSED**.

**I.     BACKGROUND**
   Giselle Sanfillippo ("Sanfillippo") is an eligible beneficiary of a health care plan

(the "Plan") administered by the Fund.  (Defendant's L.Civ.R. 56.1 Statement of Undisputed Facts, hereinafter "Def. Stmt.," ¶ 2).  The Plan, which meets the statutory definition of an "employee welfare benefit plan" as set out in the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., does not require pre-approval for inpatient procedures but provides reimbursement for treatments that are "medically necessary" only.  (*Id*. at ¶¶ 4, 9; Certification of Michael McNally, hereinafter "McNally Certif.," Exh. A; Plaintiff's Opposition Brief and Counterstatement of Facts, hereinafter "Pl. Opp.," at 2).  Under the terms of the Plan, medical necessity is determined by the Fund, which may request a recommendation from an independent, third party medical review board to assist in its decision.  (Def. Stmt. ¶¶ 9, 13; McNally Certif. Ex. A).  The Plan also provides that in the event of a dispute over a medical necessity determination, the parties must submit to arbitration before a lawsuit may be filed.  (Def. Stmt. ¶ 11; McNally Certif. Ex. A).  Furthermore, the Plan mandates that denial of a claim cannot be reversed unless the Fund's determination is found to be "arbitrary and capricious or made in bad faith."  (Def. Stmt. ¶ 10; McNally Certif. Ex. A). Finally, the Plan permits the assignment of benefits from a patient to a doctor, in the form of payments due for hospital, surgical, or medical expenses only.  (Def. Stmt. ¶ 12, McNally Certif. Ex. A).

In December 2005, Sanfillippo sought medical treatment for chronic back pain. (Def. Stmt. ¶ 14; McNally Certif. Ex. B).  Plaintiff, Kenneth Zahl, M.D. ("Zahl"), her treating physician of several years, determined that she should undergo a procedure for spinal cord stimulation ("SCS").  (Pl. Opp. at 1-2).  He reached this determination after treating her with multiple, less invasive techniques and modalities, all of which failed to relieve her pain.  (*Id*.).  He thus performed the SCS procedure, installing a trial stimulator into her spine.  (*Id*. at 2).  However, because the desired results were not achieved, he removed the device and declined to install a permanent spinal cord stimulator.  (*Id*.).

Plaintiff, to whom Sanfillippo apparently assigned her benefits under the Plan as permitted by its terms, then submitted a claim for $15,956.00 to the Fund for reimbursement.  (Def. Stmt. ¶ 2).  The Fund forwarded Plaintiff's claim to United Review Services ("URS"), an independent medical review board, to determine whether the SCS procedure was medically necessary and therefore covered.  (*Id*. at ¶¶ 13, 17; McNally Certif. Ex. C).  In its initial report to the Fund, dated December 29, 2005, URS found that the procedure was not medically necessary on the grounds that Plaintiff had not exhausted the less invasive treatment modalities deemed pre-requisites for SCS by the medical community.  (Def. Stmt. ¶ 18; McNally Certif. Ex. C).

Plaintiff thereafter supplied URS with documentation showing that in fact, he had performed the less invasive, pre-requisite treatments, and that they had failed to relieve Sanfillippo's pain, necessitating the SCS.  (Def. Stmt. ¶ 18; McNally Certif. Ex. D; Pl. Opp. at 2-3).  URS then re-analyzed Plaintiff's claim.  (Def. Stmt. ¶ 19; McNally Certif. Ex. D).  URS issued a second report, again recommending denial.  (*Id*.).  This time, URS based its recommendation on the apparently mistaken belief that Zahl was seeking reimbursement for a permanent installation without having first performed the trial installation.  (McNally Certif. Ex. C, D).  The report does not seem to recognize Zahl's

2

claim that the procedure for which he sought reimbursement was the trial installation and not a permanent installation.

On August 21, 2006, the Fund adopted URS's recommendation, denied the claim in total, and issued a letter explaining the denial and the appeals process. (Def. Stmt. ¶ 21; McNally Certif. Ex. E; Pl. Opp. at 3). Soon thereafter, Sanfillippo wrote a letter to the Fund, which was treated as an appeal. (Def. Stmt. ¶¶ 22-23; McNally Certif. Ex. F). The Fund denied the appeal, relying upon URS's previous findings and recommendations. (Def. Stmt. ¶ 24: McNally Certif. Ex. G). Plaintiff, it is undisputed, did not seek to submit to arbitration. (Def. Stmt. ¶ 26; Pl. Opp. at 3). Instead, Zahl filed a lawsuit in state court, which Defendant removed to federal court. The Complaint seeks payment for the SCS treatment. Presently before the Court is Defendant's Motion for Summary Judgment in its favor, on the grounds that (1) Plaintiff failed to exhaust his administrative remedies as set out in the Plan, and (2) the Fund's determination with respect to medical necessity was proper.

## II.   ANALYSIS
### A.   Standard of Review

Summary judgment eliminates unfounded claims without resorting to a costly and lengthy trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). However, a court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex Corp.*, 477 U.S. at 323. A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id.* at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The substantive law determines which facts are material. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

### B.   Plaintiff's Failure to Exhaust Administrative Remedies

Although ERISA does not itself contain an exhaustion requirement, the statute mandates that covered benefit plans provide administrative remedies for beneficiaries whose claims for benefits have been denied. *See* 29 U.S.C. § 1133; *Metropolitan Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007); *Karpiel v. Ogg, Cordes, Murphy & Ignelzi, LLP*, 297 Fed.Appx. 192, 193 (3d Cir. 2008). Therefore, to give this provision meaning, it is well-settled in the Third Circuit that a court will not consider an ERISA

benefit claim unless the plaintiff has exhausted the administrative remedies made available under the benefit plan, except in very limited circumstances. *Harrow v. Prudential Ins. Co. of America*, 279 F.3d 244, 252 (3d Cir. 2002); *Weldon v. Kraft*, 896 F.2d 793, 800 (3d Cir. 1990). A mandatory arbitration clause constitutes a recognized and acceptable administrative remedy. *See* 29 C.F.R. 2560.503-1.

The primary exception to ERISA's exhaustion requirement is futility. *See Berger v. Edgewater Steel Co.,* 911 F.2d 911, 916 (3d Cir. 1990) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile"). The only other circumstances under which courts have excused a failure to exhaust administrative remedies have been where the plaintiff can show a risk of irreparable harm or the denial of meaningful access to the administrative procedures. *Majka v. Prudential*, 171 F.Supp.2d 410, 414 (D.N.J. 2001). A plaintiff must demonstrate the existence of a recognized exception to the exhaustion requirement by a "clear and positive" showing. *Harrow*, 279 F.3d at 249.

Here, the Fund's summary plan description clearly provides that a party is required to submit all claims arising out of adverse benefit determinations to mandatory arbitration before filing a lawsuit. (Def. Stmt. ¶ 11; McNally Certif. Ex. A). Nevertheless, Plaintiff readily admits that he did not even attempt to submit his claim to arbitration. (Pl. Opp. at 3). He also does not allege that any of the exceptions to the exhaustion requirement, namely futility, harm, or denial of access, apply here, nor could he credibly do so. Rather, Zahl merely contends that he "exhausted what [he and Sanfillippo] thought, *and still believe to be*, all internal appeals with the 641 Teamsters Fund" (emphasis in original). (Pl. Opp. at 3).

This argument is unavailing, because neither confusion nor ignorance regarding a plan's requirements excuses a failure to exhaust administrative remedies. Moreover, the contention seems disingenuous. Upon the initial denial of the claim, the Fund sent Plaintiff a letter outlining the review process, as it was required to do by law. (McNally Certif. Ex. E). The letter clearly explained that upon denial of a claim, a party must first appeal to the Fund, and then, should the appeal also be denied, submit the claim to arbitration before commencing litigation.[1] This issue was also raised in Defendant's Memorandum of Law in support of its Motion for Summary Judgment, to which Plaintiff responded and made this curious contention. (Defendant's Memorandum of Law at 9-10). Therefore, even if Plaintiff had at one point been unaware of the arbitration requirement, it is unclear how he could claim to still be unaware of it at the present juncture.

Because the Plan clearly required all claims arising out of adverse benefit determinations to be submitted to arbitration before the filing of a lawsuit, and because

---

[1] Plaintiff argues that the letter sent to SanFillippo after her appeal was denied, attached to the McNally Certification as Exhibit H, fails to mention mandatory arbitration or the possibility of filing a lawsuit pursuant to ERISA. However, the letter that was sent directly to him upon the initial denial of his claim, attached to the McNally Certification as Exhibit E, plainly states that if the fund "denies your appeal, in whole or in part, you must submit your claim to Arbitration. If the arbitrator upholds your benefit denial, in whole or in part, you may bring a civil action against the Fund in state or federal court under Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiff clearly failed to abide by this requirement, it is apparent that Plaintiff did not exhaust his administrative remedies. As such, Plaintiff's complaint must be dismissed in its entirety. There exist no genuine issues of material fact, and summary judgment in favor of Defendant is warranted.

### C. The Propriety of the Fund's Denial of Plaintiff's Claim for Benefits

Defendant also argues that summary judgment is appropriate because the denial of Plaintiff's claim was neither arbitrary nor capricious, the standard that a court must use to review a denial of benefits determination in the ERISA context. Given that the Complaint must be dismissed due to Plaintiff's failure to exhaust his administrative remedies, the Court will not address this argument at this time.

### III. CONCLUSION

For the reasons stated above, the Court finds that there are no genuinely disputed material facts that would preclude entry of summary judgment in favor of Defendant. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Complaint is **DISMISSED** with prejudice.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**